UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| JEFFERY CAPLER, JR., | ) |
| Plaintiff, | ) |
| v. | ) No. 2:17-cv-00480-JRS-DLP |
| BYRD SAMUEL, REGINA J. ROBINSON, ANNE M. CONNER, MARY RANKIN, | ) |
| Defendants. | ) |

**Entry Granting Defendants' Motion for Summary Judgment**

On October 17, 2017, Plaintiff Jeffery L. Capler, Jr., filed this civil action alleging that his Eighth Amendment rights were violated by the defendants while he was incarcerated at the Wabash Valley Correctional Facility. Specifically, Mr. Capler alleges that the defendants were deliberately indifferent to his serious medical needs by delaying proper medical attention and medication for the "excruciating" pain in his left shoulder, arm, and hand between June 29, 2017, and September 22, 2017. Defendants Anne Conner, Regenia Robinson, and Samuel Byrd, M.D.,[1] seek resolution of the claims alleged against them through summary judgment. Mr. Capler, with the assistance of court recruited counsel, has responded.[2] For the reasons explained below, the defendants' motion for summary judgment, dkt [52], is **granted.**

---

[1] Mary Rankin was also named as a defendant. The claims against her are dismissed with prejudice given the plaintiff's admission that he is no longer pursuing claims against her. See dkt. 60 at fn. 1.

[2] The Court is grateful to Attorney Erin Escoffery for providing pro bono services to the plaintiff in this case.

## I. Summary Judgment Standard

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). As the current version of Rule 56 makes clear, whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(B). Affidavits or declarations must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on matters stated. Fed. R. Civ. P. 56(c)(4). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

In deciding a motion for summary judgment, the Court need only consider disputed facts that are material to the decision. A disputed fact is material if it might affect the outcome of the suit under the governing law. *Williams v. Brooks*, 809 F.3d 936, 941-42 (7th Cir. 2016). "A genuine dispute as to any material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Daugherty v. Page,* 906 F.3d 606, 609-10 (7th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).

On summary judgment, a party must show the Court what evidence it has that would convince a trier of fact to accept its version of the events. *Gekas v. Vasilades*, 814 F.3d 890, 896 (7th Cir. 2016). The moving party is entitled to summary judgment if no reasonable fact-finder

could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Skiba v. Illinois Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). The Court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and the Seventh Circuit Court of Appeals has repeatedly assured the district courts that they are not required to "scour every inch of the record" for evidence that is potentially relevant to the summary judgment motion before them. *Grant v. Trustees of Indiana University,* 870 F.3d 562, 573-74 (7th Cir. 2017). Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Anderson*, 477 U.S. at 255.

## II. Material Facts

### A. Anne Conner

Anne Conner is a registered nurse licensed to practice medicine in the State of Indiana. She is currently employed as a nurse at the Wabash Valley Correctional Facility in Carlisle, Indiana. Prior to April 1, 2017, Ms. Conner was employed in this capacity by Corizon, LLC. Following April 1, 2017, she has held this position as an employee of Wexford of Indiana, LLC. Dkt. 54-2, ¶ 1-2.

During Ms. Conner's time as a nurse at the Wabash Valley Correctional Facility, she had an opportunity to see and interact with a patient by the name of Jeffery Capler. *Id.* at ¶ 3.

As a nurse at the Wabash Valley Correctional Facility, there are a number of obligations and duties that Ms. Conner had to perform each day, and they would change throughout the years, or based upon the needs of the facility. One of the roles that Ms. Conner would perform at the

Wabash Valley Correctional Facility was to complete nurse sick call and triage patients who were in need of medical care. *Id.* at ¶ 4.

Patients at the Wabash Valley Correctional Facility are instructed to submit written health care request forms for all non-emergent medical needs. Those written requests for health care are received by nursing staff onsite, and patients are scheduled to be seen by a nurse on nurse sick call. Ms. Conner would often be the nurse assigned to see patients who had submitted health care request forms. *Id.* at ¶ 5.

Medical records reflect that on June 29, 2017, Mr. Capler submitted a Request for Health Care, which stated, "Im having this pain & funny feeling in my left arm from my shoulder on down my shoulder feels as if it not in the place. I need it looked at please." Dkt. 1-1 at p. 3; Dkt. 54-2, ¶ 6.

On July 3, 2017, Mr. Capler was seen by Ms. Conner as part of her assigned nurse sick call. At that time, Mr. Capler specifically informed Ms. Conner that his left arm would twitch and sometimes go numb. She checked his vitals, which were all normal, and he reported a history of a car accident in 2013. While he complained of discomfort, Ms. Conner noted that he had full range of motion of his arm, and that there were no signs of any weakness. Mr. Capler was aware of the ability to purchase medications onsite through the institutional commissary. Given his complaint, and that there were no objective signs of any weakness or limited range of motion, Ms. Conner provided Mr. Capler an instructional sheet regarding arm/hand exercises as well as shoulder exercises, and pursuant to nursing protocol, instructed him to perform these exercises for 6-8 weeks. She further instructed him that if at any time his symptoms were not improved, to submit another health care request for an evaluation. Dkt. 54-2, ¶ 6.

On August 19, 2017, Mr. Capler submitted a second Request for Health Care, which stated,

> I'm still having this pain & funny feeling in my left arm & hand it still going num nothing has changed since the last request I put in about on 6-29-17 in I did all of them exercises on the sheet that was given to me may I please get someone to see whats going on.

Dkt. 1-1 at p. 4.

Mr. Capler was seen by Ms. Conner again on August 23, 2017, as part of nurse sick call. Mr. Capler reported that he had "something" going on with his upper gums, and he also reported pain and numbness that he believed had worsened since his prior nurse sick call visit in July. Ms. Conner checked his vital signs, which were again normal, and Mr. Capler again noted the history of a car accident, this time in 2012. Given that he was reporting his symptoms were worse, Ms. Conner ordered an evaluation by a practitioner onsite. Dkt. 54-2 at ¶ 7.

On September 10, 2017, Mr. Capler submitted a third Request for Health Care, which stated, "This is request #3 about my left shoulder & arm & hand having pain & going num. The f[ir]st requ[es]t I put in about it was 6-29-17 & the second [request] was 8-19-17 I had did all the exercises that was giving to me & nothing has changed it is now 9-10-17 & I still haven't received any medical attention & I would like to [know] why? When she scheduled for me to see a doctor." Dkt. 1-1 at p. 5.

On September 13, 2017, Ms. Conner noted that Mr. Capler was scheduled with the doctor. She further noted that she had previously seen him on August 23, 2017, and that he had already been scheduled for an evaluation by a doctor, pursuant to her order on August 23, 2017. Dkt. 54-2 at ¶ 8.

On September 18, 2017, Mr. Capler submitted a fourth Request for Health Care, which stated, "I am having this excruciating pain in my shoulder, arm, hand on my left side I was told that I had to wait to see the doctor but [until] then can I get some type of pain medication for this pain please." Dkt. 1-1 at p. 6.

5

On September 20, 2017. Mr. Capler was seen for a fourth time by Ms. Conner. It was again noted that he was "scheduled with MDSC." *Id.* Ms. Conner again accessed Mr. Capler's vitals, which were again normal, and Mr. Capler again reported numbness in his left arm, shoulder and hand. Ms. Conner reviewed the records and noted that she had previously ordered that he be evaluated by a practitioner on August 23, 2017, but for some reason, he had not yet been put on Dr. Byrd's MD sick call line. Ms. Conner again noted that Mr. Capler was to be seen by Dr. Byrd soon and Mr. Capler was put on Dr. Byrd's schedule the same day and seen by Dr. Byrd two days later. Dkt. 54-2 at ¶ 9.

On September 22, 2017, Mr. Capler was seen by Dr. Byrd. He was prescribed Prednisone and x-rays were ordered, which returned normal. *Id.* at ¶ 10. Ms. Conner did not have any further involvement in or interaction with Mr. Capler's medical care. *Id.* at ¶ 11.

Ms. Conner is not personally responsible for putting patients on the sick call list for the physician. Instead, when performing triage assessments on nurse sick call, she will make orders pursuant to protocols, and nursing staff onsite will then create the schedule for Dr. Byrd. *Id.* at ¶ 14. Ms. Conner is not aware of why Mr. Capler was not put on Dr. Byrd's schedule following her order on August 23, 2017. However, when it became clear that Mr. Capler was not on the schedule, Ms. Conner insured Mr. Capler was promptly put on Dr. Byrd's schedule and he was seen two days after her nurse sick call visit of September 20, 2017. *Id.* at ¶ 15.

To Ms. Conner's knowledge, and based upon her review of the records, Mr. Capler was never diagnosed with any significant or serious abnormality of the arm or shoulder. *Id.* at ¶ 16.

### B. Regenia Robinson

Ms. Robinson is a registered nurse licensed to practice medicine in the State of Indiana. During all times relevant to this action, she was employed as Director of Nursing at the Wabash

Valley Correctional Facility in Carlisle, Indiana. Prior to April 1, 2017, Ms. Robinson was employed in this capacity by Corizon, LLC. Following April 1, 2017, she held this position as an employee of Wexford of Indiana, LLC. In 2018, Ms. Robinson left this position, and no longer holds employment at the Wabash Valley Correctional Facility. Dkt. 54-3 at ¶¶ 1-2.

Ms. Robinson does not recall any direct interaction or involvement in the medical care of Mr. Capler. *Id.* at ¶ 3. As the Director of Nursing, Ms. Robinson would not often engage in direct patient contact on a daily basis at the Wabash Valley Correctional Facility. Instead, her job duties were administrative, as Ms. Robinson would address issues that were presented to nursing staff onsite, oversee the nursing services provided onsite, and also respond to grievances and health care requests as needed. *Id.* at ¶ 4.

According to Ms. Robinson's review of the records, on July 4, 2017, Mr. Capler submitted a health care request asking for blood work. Ms. Robinson received this request on July 6, 2017, and then contacted staff onsite to order a Hepatitis C and HIV blood test. *Id.* at ¶ 5.

On September 12, 2017, Mr. Capler submitted an informal grievance, alleging that he was having shoulder, arm and hand discomfort, and was in need of medical attention. While Mr. Capler dated the grievance September 12, 2017, the received stamp in the upper right hand corner indicated the grievance was not received by Ms. Robinson until September 27, 2017. Mr. Capler wrote, "I have been putting medical request after medical request in about my shoulder, arm & hand having really bad pain & it going num. I did the exercises that was giving to me & still I put in about this pain that's going on & nothing is getting done about it. My constitutional rights are being violated & Im being denied medical attention. I should not have to file a grievance to be seen." Dkt. 1-1 at p.1. Ms. Robinson responded to this grievance on September 29, 2017. She reviewed the relevant medical records and noted Mr. Capler had been seen by physician Samuel

Byrd on September 22, 2017. Ms. Robinson noted that the doctor's report reflected that no abnormalities were found on exam, the x-rays that were ordered had already been completed, and Mr. Capler had been prescribed medication. Dkt. 54-3 at ¶ 7.

To the best of Ms. Robinson's knowledge and based upon her review of the records, these are the only two interactions Ms. Robinson had involving Mr. Capler and his medical care. *Id.* at ¶ 8.

### C.  *Samuel Byrd, M.D.*

Dr. Byrd is a physician licensed to practice medicine in the State of Indiana. During all times relevant to the Complaint, and currently, Dr. Byrd is employed as a physician at the Wabash Valley Correctional Facility in Carlisle, Indiana. Currently, Dr. Byrd is employed in this capacity by Wexford of Indiana, LLC. Prior to April 1, 2017, Dr. Byrd was employed in this capacity by Corizon, LLC. Dkt. 54-4 at ¶ 1-2.

During Dr. Byrd's time as a physician at the Wabash Valley Correctional Facility, he has seen and treated Jeffery Capler. *Id.* at ¶ 3.

According to Dr. Byrd's review of the medical records, Mr. Capler first arrived at the Wabash Valley Correctional Facility on December 13, 2016. Prior to that time, he had been incarcerated at the Plainfield Correctional Facility. *Id.* at ¶ 4.

Dr. Byrd's first evaluation of Mr. Capler occurred on September 22, 2017, and Mr. Capler complained of shoulder pain. Mr. Capler stated that his pain was on top of his left shoulder. He described the pain and numbness as radiating down his left arm. He informed Dr. Byrd that he had injured his left shoulder many years ago, but that his current discomfort appeared to be different. He reported pain with movement and lying on his shoulder and no relief with rest and commissary medications. Dr. Byrd performed a full musculoskeletal examination, noting some tenderness but

normal range of motion. Dr. Byrd indicated that he was unclear as to whether his condition was related to his shoulder or neck given the tingling in the left arm and no distinct evidence of any injury. Dr. Byrd prescribed Prednisone 20 mg to decrease any inflammation and ordered x-rays. He also continued an order for Tylenol through October 28, 2017. *Id.* at ¶ 6.

Mr. Capler received x-rays on September 22, 2017, of his left shoulder and cervical spine, both returning normal. *Id.* at ¶ 7.

On September 23, 2017, Mr. Capler submitted a fifth Request for Health Care, which stated,

> I am having 'Excruciating' pain in my left shoulder & hand & arm may I 'please' get some type of pain medication. I am indigent in have no type of money coming in & I owe restitution so I can not pay for it or order it off of commissary. I've been denied even after I told them this.

Dkt. 1-1 at p. 8. In response, the health care staff noted that Dr. Byrd would "order Tylenol" and "refer to MDSC." *Id.*

On September 27, 2017, Mr. Capler submitted a sixth Request for Health Care, which stated, "I had a x-ray done on 9-22-17 & was told I would hear something from the doctor or get a copy of my x-ray by 9-25-17 or 9-26-17 & I have not gotting anything or heard anything can I please know wats going on please." Dkt. 1-1 at p. 7.

On October 20, 2017, Mr. Capler was transferred from the Wabash Valley Correctional Facility to the Indiana State Reformatory in Pendleton, Indiana. Dkt. 54-4 at ¶ 8. Medical records reflect that he was evaluated by Dr. Paul Talbot, who is the Medical Director at the Indiana State Reformatory or "ISR." Dr. Talbot's examination was normal. Dr. Talbot specifically noted that no functional limitations were discerned on exam and no observable decrease in Mr. Capler's ability to perform his activities of daily living. He was given another instructional exercise sheet, as well as a trial of Mobic for 30-days. Dkt. 54-4 at ¶ 9.

9

According to Dr. Byrd's review of the records, he only saw Mr. Capler once, ordered Prednisone and x-rays, and instructed Mr. Capler regarding appropriate exercises to decrease his symptoms. *Id.* at ¶ 11. To Dr. Byrd's knowledge, Mr. Capler has never been diagnosed with any serious or significant abnormality of the neck or shoulder. *Id.* at ¶ 13.

Dr. Byrd does not personally set his schedule of patients every day. Instead, other staff members onsite at the Wabash Valley Correctional Facility will put patients on his schedule based upon the needs of inmates in the facility and the policies of the Indiana Department of Correction. As such, during any given day, Dr. Byrd will often see patients on his MD sick call line, as well as patients in the infirmary, chronic clinic appointments, or any other emergent or immediate needs that may occur at the facility. *Id.* at ¶ 15.

### III. Discussion

Mr. Capler alleges that the defendants are liable to him for failing to provide constitutionally adequate medical care. At all times relevant to Mr. Capler's claim, he was a convicted offender. Accordingly, his treatment and the conditions of his confinement are evaluated under standards established by the Eighth Amendment's proscription against the imposition of cruel and unusual punishment. *See Helling v. McKinney*, 509 U.S. 25, 31 (1993) ("It is undisputed that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment.").

Pursuant to the Eighth Amendment, prison officials have a duty to provide humane conditions of confinement, meaning, they must take reasonable measures to guarantee the safety of the inmates and ensure that they receive adequate food, clothing, shelter, and medical care. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To prevail on an Eighth Amendment deliberate indifference medical claim, a plaintiff must demonstrate two elements: (1) he suffered from an

objectively serious medical condition; and (2) the defendant knew about the plaintiff's condition and the substantial risk of harm it posed, but disregarded that risk. *Id.* at 837; *Petties v. Carter*, 836 F.3d 722, 727–28 (7th Cir. 2016) (en banc); *Pittman ex rel. Hamilton v. County of Madison, Ill.*, 746 F.3d 766, 775 (7th Cir. 2014).

"[C]onduct is 'deliberately indifferent' when the official has acted in an intentional or criminally reckless manner, *i.e.*, 'the defendant must have known that the plaintiff was at serious risk of being harmed [and] decided not to do anything to prevent that harm from occurring even though he could have easily done so.'" *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005) (*quoting Armstrong v. Squadrito*, 152 F.3d 564, 577 (7th Cir. 1998) (internal quotation marks and citation omitted)). "To infer deliberate indifference on the basis of a physician's treatment decision, the decision must be so far afield of accepted professional standards as to raise the inference that it was not actually based on a medical judgment." *Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006); *see also Plummer v. Wexford Health Sources, Inc.*, 609 F. App'x. 861, 2015 WL 4461297, *2 (7th Cir. 2015) (holding that defendant doctors were not deliberately indifferent because there was "no evidence suggesting that the defendants failed to exercise medical judgment or responded inappropriately to [the plaintiff's] ailments"). In addition, the Seventh Circuit has explained that "[a] medical professional is entitled to deference in treatment decisions unless no minimally competent professional would have [recommended the same] under those circumstances." *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014).

A delay in treatment that causes unnecessary pain is actionable even if it did not exacerbate the injury or diminish the chances of a full recovery. *See Gomez v. Randle*, 680 F.3d 859, 865-66 (7th Cir. 2012) (holding that the plaintiff stated an Eighth Amendment claim because "even though this [four-day] delay [in treatment] did not exacerbate [the plaintiff's] injury, he experienced

prolonged, unnecessary pain as a result of a readily treatable condition"); *Arnett v. Webster*, 658 F.3d 742, 753 (7th Cir. 2011) ("A delay in treating non-life-threatening but painful conditions may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain."). "Even a few days' delay in addressing a severely painful but readily treatable condition suffices to state a claim of deliberate indifference." *Smith v. Knox Cnty. Jail*, 666 F.3d 1037, 1040 (7th Cir. 2012).

### A. *Serious Medical Need*

The defendants argue that there is no evidence that Mr. Capler had a serious medical need. The defendants argue that Mr. Capler does not have any functional limitations and could perform activities of daily living. The x-ray results appeared normal. In addition, there is no basis to conclude that Mr. Capler was ever diagnosed with a serious or significant abnormality of the neck or shoulder. In response, Mr. Capler argues that he experienced excruciating pain that was an objectively, sufficiently serious condition. *See Gil v. Reed*, 381 F.3d 649, 662 (7th Cir. 2004) (holding that hours of needless suffering can constitute harm).

Given the summary judgment record, the Court concludes that whether Mr. Capler had a serious medical need is a fact in dispute.

### B. *Personal Responsibility*

Even if Mr. Capler had a serious medical need, the defendants argue that there is no evidence that they were deliberately indifferent to Mr. Capler's concerns. They assert that Mr. Capler has not been able to identify or specify any action or inaction of any defendant that rises to the level of deliberate indifference. This matters because no defendant may be held liable under 42 U.S.C. § 1983 unless he or she has some personal involvement in the alleged constitutional deprivation. *Williams v. Shah*, 927 F.3d 476 (7th Cir. 2019). Thus, the Court need not reach the

questions whether there was a delay in treatment or whether Mr. Capler received constitutionally adequate care for his left neck, shoulder, arm and hand pain, but instead decides whether there is any evidence that a particular defendant is responsible for delaying treatment or providing inadequate care. *See Gaston v. Ghosh*, 920 F.3d 493, 496 (7th Cir. 2019) (affirming summary judgment for defendants where it was unclear who was responsible for delaying treatment). The claim against each defendant is discussed below.

   *1. Anne Conner*

With regards to Ms. Conner, Mr. Capler does not present any evidence or argument of any wrongdoing on her behalf. Mr. Capler does not argue that her actions on July 3, 2017, were improper, where she provided instruction regarding exercises. Moreover, Mr. Capler presents no evidence or argument that it was improper for her to recommend an onsite visit with the practitioner during her evaluation on August 23, 2017. Mr. Capler does not present any argument that she failed to take any steps that were necessary or point to any omissions in her actions.

The record reflects that Ms. Conner was not deliberately indifferent. On her first visit with Mr. Capler, she understood him to have minor symptoms and normal range of motion, and she provided an instructional sheet for exercises. Upon his return, Ms. Connor scheduled Mr. Capler to be seen by a physician. There was an unfortunate delay between the time Ms. Conner ordered the appointment and the time the appointment was scheduled. However, there is no evidence that Ms. Connor is responsible for putting patients on the sick call list for a physician. When it became clear that Mr. Capler had not been scheduled to see the doctor as she had ordered, she insured that Mr. Capler was promptly put on Dr. Byrd's schedule, and Mr. Capler was seen two days after her last relevant visit.

13

Under these circumstances, no reasonable jury could find Ms. Conner deliberately indifferent. Accordingly, Ms. Conner is entitled to judgment as a matter of law.

### 2. *Regenia Robinson*

Ms. Robinson argues that Mr. Capler has failed to present any evidence that suggests she was deliberately indifferent to his serious medical needs. The records and Ms. Robinson's testimony reflect that her involvement with Mr. Capler's medical care for his left shoulder and arm was responding to a grievance. By the time Ms. Robinson received and responded to the informal grievance, the medical records showed Mr. Capler had already been evaluated by a physician onsite and received orders for an x-ray and steroids (Prednisone). In other words, Ms. Robinson did not cause any delays to Mr. Capler's medical care. *See Owens v. Hinsley,* 635 F.3d 950, 953 (7th Cir. 2011) (handling of grievances by persons who otherwise did not cause or participate in the underlying conduct states no claim); *see also George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007) ("Only persons who cause or participate in the [Constitutional] violations are responsible. Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation.") (internal citations omitted). A general statement that care should have been provided at an earlier time is not sufficient to create a genuine issue of material fact as to Ms. Robinson, as there is no argument, evidence, or indication that her actions were insufficient or improper. Accordingly, there is no evidence to support a claim that Ms. Robinson was deliberately indifferent to Mr. Capler's medical needs, and Ms. Robinson is entitled to judgment as a matter of law.

### 3. *Samuel Byrd, M.D.*

Finally, Dr. Byrd argues that he is entitled to judgment as a matter of law because he provided appropriate care and treatment. In response, Mr. Capler argues that the delay to see a

physician caused him harm. However, there is no evidence that Dr. Byrd was aware of Mr. Capler's complaint before September 22, 2017. Further, Mr. Capler does not provide any evidence of Dr. Byrd's involvement prior to that date or pinpoint any action, inaction, or personal involvement of Dr. Byrd that could give rise to deliberate indifference.

To the contrary, Dr. Byrd had a single visit with Mr. Capler on September 22, 2017, before he was transferred to the Indiana State Reformatory on October 20, 2017. During the September visit, Dr. Byrd discussed Mr. Capler's medical history, as well as any history of arm/shoulder discomfort, and performed a thorough evaluation noting some tenderness but normal range of motion. Dr. Byrd prescribed Prednisone 20 mg to decrease any inflammation, ordered x-rays, and continued an order for Tylenol. X-rays received on September 22, 2017, of the shoulder and cervical spine returned normal. The records further reflect that during a follow-up examination by Dr. Talbot at ISR, Mr. Capler was prescribed pain medications, but no abnormalities were detected.

Further, Dr. Byrd does not personally set his schedule of patients every day at the facility. Instead, other staff members at the facility will put patients on Dr. Byrd's schedule based upon the needs at the facility and based upon Indiana Department of Correction policy. Dr. Byrd did not have any direct involvement in the process of scheduling Mr. Capler to be seen on Dr. Byrd's sick call line.

Without any evidence of deliberate indifference, Dr. Byrd is entitled to judgment as a matter of law.

IV.  **Conclusion**

The evidence shows Mr. Capler was never diagnosed with any serious or significant abnormality, even after he transferred out of the Wabash Valley Correctional Facility. As such,

this is not a case where the Mr. Capler had some undiagnosed or serious medical condition that was overlooked by the defendants. However, even assuming that Mr. Capler's neck, shoulder, arm and hand pain were sufficiently serious, there is no evidence that any defendant was deliberately indifferent to Mr. Capler's pain or responsible for the delay in having him evaluated by a doctor. Defendants Anne Conner, Mary Rankin, Regenia Robinson and Samuel Byrd, M.D., are entitled to judgment in their favor as a matter of law. The Joint Motion for Summary Judgment pursuant to Rule 56 of The Federal Rules of Civil Procedure, dkt. [52], is **granted.**

Final judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date: 7/25/2019

*[signature]*

JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution:

JEFFERY CAPLER, JR.
149701
PENDLETON - CF
PENDLETON CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

All Electronically Registered Counsel